UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD SCHAFER and
HENRY BLOCK,

           Plaintiffs,           Case No. 12-cv-13152

v                                     Honorable Thomas L. Ludington

MULTIBAND CORPORATION,

           Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION TO VACATE, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING ARBITRATOR'S AWARD**

      In 2008 Defendant Multiband sought to purchase Plaintiffs' stock in DirecTECH Holding Company. Multiband was informed that the Department of Labor had been investigating certain transactions in 2003 to 2006 regarding the Holding Company's employee stock ownership plan; indeed, Multiband received detailed reports concerning the investigation. At some point the parties reached an agreement for Multiband's purchase of Plaintiffs' stock that included Multiband's agreement to assume prior indemnity obligations that had been executed in favor of Plaintiffs.

      The Department of Labor did file suit against Plaintiffs, seeking about $42 million; however, the Department of Labor and Plaintiffs reached a settlement for $2.9 million. There was no admission of liability, and Multiband was kept informed throughout the course of the proceedings.

      Plaintiffs then sought indemnity from Multiband pursuant to the agreements for the settlement amount and legal expenses. Inexplicably, Multiband then refused to honor the

indemnity agreements that had been inked less than three years earlier. Plaintiffs began the arbitration proceeding and sought either indemnity pursuant to the agreements or, alternatively, damages for inducing their reliance on Multiband's indemnification agreements.

The parties agreed to submit a series of issues related to the enforceability of the indemnity agreements to the arbitrator as a preliminary matter. Multiband argued that the indemnity agreements were unenforceable. The arbitrator not only found the indemnity agreements unenforceable, he also concluded the arbitration without attention to Plaintiffs' alternative argument—that they relied on Multiband's agreements to indemnify them in entering into the agreement to sell their stock to Multiband.

This litigation ensued. This Court agreed with Plaintiffs that the arbitrator manifestly disregarded the law in finding the indemnification agreements "void as against public policy." Because this Court vacated the arbitration award on this ground, it did not take up Plaintiffs' alternative request for relief—that the Court should vacate the award or reopen the arbitration because the arbitrator exceeded his powers by *sua sponte* concluding the arbitration without giving attention to Plaintiffs' alternate claim for fraudulently inducing them to enter into the indemnity agreements.

The Sixth Circuit reversed due primarily to its determination that the arbitrator's decision was not in manifest disregard of the law. The parties presently dispute, however, whether the Sixth Circuit, in reversing the vacatur, also addressed and decided Plaintiffs' alternative argument that the arbitrator exceeded his powers by sua sponte concluding the arbitration without attention to Plaintffs' alternative argument. Because it appears that Plaintiffs presented their alternative argument to the Sixth Circuit, and because it appears the Sixth Circuit rejected

the argument, this Court is reluctantly bound to grant Multiband's motion to affirm the arbitration award.

**I**

Plaintiffs Bernard Schafer and Henry Block founded and owned Michigan Microtech, Inc., a company that sells and installs satellite television equipment. After the initial success of Michigan Microtech, they expanded their business and acquired partial ownership and management interests in DirecTECH, DirecTECH Southwest, Inc., and JBM, Inc.

Plaintiffs created a holding company, DirecTECH Holding Company, Inc., ("Holding Company"), which became the parent company of all four entities (Michigan Microtech, DirecTECH, DirecTECH Southwest, Inc., and JBM, Inc.).

As directors of the Holding Company, Plaintiffs executed an indemnification agreement that provided that Plaintiffs would be indemnified for all losses incurred in connection with their roles as directors of the Holding Company, with exceptions for deliberate wrongful acts and gross negligence:

> The Company hereby agrees to indemnify and hold the Board Member harmless from and against any and all past, present or future losses, claims, damages, expenses, or liabilities (including, but not limited to, reasonable attorney's fees, court costs, judgments, fines, excise taxes related to litigation or aggregate amount pain [sic] in reasonable settlement of any actions, suites [sic], proceedings, or claims) (hereinafter collectively referred to as "Loss"), incurred in connection with any and all actions, proceedings, or suits of any kind or nature whatsoever, which arises as a result of acts or omissions of the Board Member within the scope of his activities for and on behalf of the Company and which do not involve wrongful acts or gross negligence by the Board Member.

The indemnification agreement also contained a mandatory arbitration clause.

In addition, the Holding Company also formed its own employee stock ownership plan ("ESOP") and an employee stock ownership trust ("ESOT"). Plaintiffs became trustees of the

Holding Company ESOP and ESOT, and executed an almost-identical indemnification agreement regarding their roles as trustees.

**A**

In 2005, the United States Department of Labor ("DOL") began investigating the Holding Company and its four subsidiaries regarding stock transactions involving the ESOP and ESOT. The DOL suspected that directors and trustees of the Holding Company had breached their fiduciary duties by purchasing company stock for the ESOP at inflated prices.

**i**

Despite the DOL investigation, Defendant Multiband began negotiating the purchase of the Holding Company. In 2007, Multiband and the Holding Company agreed on a plan of acquisition and began transitioning operations to Multiband. During this transition, the Holding Company provided a detailed report of the DOL's investigation.

As an attempt to induce Plaintiffs to sell its corporate stock in the Holding Company, Multiband executed indemnification agreements for losses Plaintiffs might incur in connection with their past service as trustees to the ESOP and ESOT. Specifically, Multiband agreed to indemnify each Plaintiff for any losses "which arise as a result of acts or omissions of the Board Member within the scope of his activities for and on behalf of [the Holding Company] . . . which do not involve deliberate wrongful acts or gross negligence by the board member."

Based on these indemnification promises, Plaintiffs agreed to enter into a stock purchase agreement with Multiband. Plaintiffs assert (and Multiband does not dispute) that these agreements were material to Plaintiffs' decision to sell their stock: "Had Multiband not agreed to undertake such indemnity obligations, it is undisputed that the stock purchase price of $43.9 Million would have been substantially higher and/or the transaction would not have occurred."

Mot. to Vacate 2, ECF No. 27.  On January 1, 2009, Multiband completed the purchase of the Holding Company.  Multiband paid $43.9 million for Plaintiffs' shares in the Holding Company.

**ii**

In December 2009, the DOL filed a civil suit against Plaintiffs, alleging that they breached their fiduciary duties by allowing the ESOP to purchase company stock at inflated prices.  In 2011, Plaintiffs reached a settlement agreement with the DOL.  Plaintiffs agreed to each pay $1,450,000.00 to the DOL while admitting no liability for the allegations in the complaint.

Following the entry of the settlement agreement, Plaintiffs sought indemnification from Multiband pursuant to the terms of the indemnification agreements, but Multiband refused to honor the indemnification agreements.

**B**

On October 18, 2011, Plaintiffs filed an arbitration complaint against Multiband. Plaintiffs' primary claim involved Multiband's alleged breach of contract based on the various indemnification agreements.[1]  The threshold issue, Multiband contended, was whether the indemnification agreements were void as against public policy under 29 U.S.C. § 1110(a)[2]: Plaintiffs argued that the indemnification agreements were permissible and enforceable; Multiband argued that they were void.[3]

---

[1] Plaintiffs alleged six counts of breach of contract against Multiband based on agreements made directly with Multiband and on agreements Multiband assumed.

[2] That subsection provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy."

[3] The transcript of the arbitration hearing provides:

    Arbitrator:    Let's focus on this.  If Congress hadn't written the statute that it wrote, you guys are rats, but Congress wrote the statute that it wrote, so now I've got to deal with what I got.  And when I say rats, it's the same as I said when these people stole the money from the ESOP or from the

Because Multiband argued that the indemnification agreements were void, Plaintiffs brought an alternative claim grounded on two legal theories. First, Plaintiffs alleged that Multiband fraudulently induced Plaintiffs to enter into an indemnification agreement that Multiband knew was void. They alleged that Multiband made false representations that it would assume the indemnification obligations when "Multiband never intended to honor its indemnification obligations." Mot. Vacate Ex. 3 ¶¶ 154, 160, ECF No. 9.

Second, Plaintiffs alleged that Multiband was estopped to challenge the indemnity agreements as unenforceable. Plaintiffs alleged that they had in fact relied to their detriment on Multiband's indemnification promises in selling their stock in the Holding Company. Plaintiffs reiterated that had Multiband not agreed to undertake the indemnification obligations, Multiband's purchase price for the stock would have been substantially higher.

---

| | |
|---|---|
| | plan. I mean you guys said, hey, you're covered. We'll take care of you. You wrote a whole bunch of complicated legal contracting, and we'll take care of the indemnification of this, and we'll cover for you. Then all of a sudden you said, no, we won't because you pull up a statute that nobody apparently had found, which is the smart thing for lawyers to do, but where are we here? I mean, they paid you for it. |
| Counsel for Multiband: | If the question is but for Section 410 would they owe an indemnity? Yeah. And so yes. Well, but for 410, the indemnity provisions would not be invalid. There's a subsequent issue for a later day as to whether or not the conduct they engaged in—but I just want to answer the question with clarity for purposes of the record, but to the extent that 410 doesn't—410 doesn't apply— |
| Arbitrator: | Then we have another set of issues of whether there really was a defalcation or breach of fiduciary duty and those sorts of things. I understand. |
| Counsel for Multiband: | Right. But as to the answer to your question, that would be, yes, it would be valid. And then we would have to evaluate the issue of whether or not they were engaged in conduct that was—you know, impacted payment, but that does raise another point. |

Resp. Ex. 4 at 52-53, ECF No. 11.

Plaintiffs did not seek rescission of the indemnification provisions under either of these alternative claims (fraudulent inducement or estoppel); instead, they sought consequential, incidental, and punitive damages.

**i**

To streamline the arbitration, Plaintiffs and Multiband agreed to submit the threshold issues Multiband raised regarding Plaintiffs' breach of contract claim only to the arbitrator for summary disposition. The submitted issues addressed only the legal principle of whether the indemnification agreements were void against public policy under 29 U.S.C. § 1110(a); the submitted issues did not include reference to Plaintiffs' alternative claims for fraudulent inducement and estoppel.[4]

The arbitrator conducted a hearing on the parties' motions for summary judgment regarding the enforceability of the indemnification agreement. In line with the submitted issues, the argument was focused on Plaintiffs' breach of contract claims and whether the indemnity agreements were valid. However, Plaintiffs did refer to their alternative claims during the hearing:

---

[4] The arbitrator listed three threshold issues:

> 1. **Inducement Indemnities**: Is an agreement between a former fiduciary to an ESOP (Block/Schafer), on one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. 1110, as a matter of law, where the third party agrees to indemnify the fiduciary against claims arising from its past acts or omissions as a fiduciary?
>
> 2. **Assumption Agreements**: Is an agreement between a company sponsoring an ESOP (DTHC), on one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. 1110, as a matter of law, where the third party agrees to indemnify the company's directors and former trustees to the ESOP (Block/Schafer) against claims arising from their past acts or omissions as fiduciaries?
>
> 3. Does the payment of a settlement in the DOL Litigation render the indemnity agreements inapplicable or void under 29 U.S.C. § 1110 as a matter of law?

Resp. Ex. 5, ECF No. 11.

> Instead it doesn't say [the indemnification agreements are] void. In fact the regulations say they're perfectly permissible. So I think we're past that. But it is important to note that the question that went unanswered here is, these were negotiated agreements, what did Multiband think they were obligating themselves to do at the time they signed these agreements, if not to provide indemnification? And there's no answer. They simply came up with, I don't agree with the— what's the assumption, it's a matter of fact, but I don't agree with the assumption that Multiband later found Section 410. They were well aware of Section 410, I believe. So what did they think they were doing?
>
> *We have a second claim here, a second series of claims associated with stock fraud*. We believed that these were valid agreements under ERISA. And we believe Multiband believed that. We negotiated—if Multiband later takes the position that promise I have gave you to induce you to sell me your stock was void when I gave it to you, ha, ha, ha. Then we've got a stock fraud case here, that is set forth in our complaint. . . .
>
> And it may not be a – I haven't fleshed out exactly, the fraud case, but it is a fraud case. So that's where we are.

Resp. Ex. 4 at 64-65, ECF No. 11 (emphasis added). To this Court's knowledge, the parties did not, by agreement, conduct any discovery or submit any evidence on Plaintiffs alternative claims for fraudulent inducement and estoppel.

**ii**

In June 2012, the arbitrator rendered his decision which concluded that the indemnification agreements were not enforceable under 29 U.S.C. § 1110(a):

> Because the unambiguous intent of Congress must be given effect, I find that the Indemnity Agreements and the Inducement Indemnities at issue here are, as a matter of law, void by operation of ERISA § 410(a) as against public policy.

Resp. Ex. 5, ECF No. 11. Accordingly, Plaintiffs' breach of contract claims against Multiband failed.

However, it appears the arbitrator went a step further and decided that Plaintiffs' alternative claims were also without merit. As noted above, Plaintiffs had alleged claims for fraudulent inducement and estoppel in the event that the indemnification agreements were found

void. Despite discussing Plaintiffs' breach of contract claims in-depth, however, the arbitrator did not provide any explanation for why Plaintiffs' alternative claims for fraudulent inducement and estoppel failed.

### C

On July 18, 2012, Plaintiffs filed suit in this Court to vacate the arbitration decision. In their Complaint, Plaintiffs asserted two grounds for vacating the arbitral decision:

(1) The Arbitration Decision finding the indemnification agreements void was in manifest disregard of the law; and

(2) The Arbitrator exceeded his powers by dismissing Plaintiffs' alternative claims for fraudulent inducement and estoppel without allowing them to present evidence.

Compl. ¶ 57-58, ECF No. 1.

Plaintiffs filed a motion to vacate the arbitration award, which the Court granted on February 29, 2013. In its Order vacating the arbitral award, the Court first applied Sixth Circuit precedent defining "manifest disregard":

Arbitrators manifestly disregard the law, the Sixth Circuit instructs, when "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Coffee Beanery*, 300 F. App'x at 418 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995)).

Op. & Order 13, ECF No. 13. The Court then concluded that arbitrator's decision was in manifest disregard of the law:

The arbitrator was aware of this legal principle. He chose to disregard it. . . . This was not a mere error in the interpretation or application of the law. The decision must be vacated.

*Id*. at 16. Accordingly, the Court granted judgment in favor of Plaintiffs. And because the Court vacated the arbitral award on this basis, it did not address Plaintiffs' alternative argument—that the award should be vacated because the arbitrator exceeded his powers.

i

Multiband then appealed the Order vacating the arbitral award to the Sixth Circuit. In its appellant brief, Multiband argued that the arbitrator's decision was not in manifest disregard of the law, and the arbitral award should therefore be affirmed. In response, Plaintiffs reiterated their arguments that the arbitrator's decision was in manifest disregard of the law, and, alternatively, that the arbitrator exceeded his powers in making the award.

On January 6, 2014, the Sixth Circuit found in favor of Multiband and reversed the Order vacating the arbitral award. *Schafer v. Multiband Corp.*, 551 F. App'x 814 (6th Cir. 2014). The Sixth Circuit concluded that the arbitrator had not acted in manifest disregard of the law, and that the arbitral award should not have been vacated. The Sixth Circuit therefore "reversed and remanded [this Court's judgment] for further proceedings consistent with this opinion." *Id*. at 820-21. Plaintiffs filed a Petition for Rehearing, which was denied. The Sixth Circuit issued its mandate on March 13, 2014. Mandate, ECF No. 18.[5]

ii

After the parties returned to this court, they filed cross-motions for summary judgment. Plaintiffs contend that, although the Sixth Circuit concluded that the arbitrator did not act in manifest disregard of the law, they are nonetheless entitled to vacatur of the arbitration award based on their alternative argument: that the arbitrator exceeded his powers by foreclosing Plaintiffs' right to present evidence addressing the fraudulent inducement and estoppel claims. Multiband, however, contends that the Sixth Circuit has already considered and rejected this

---

[5] After the Sixth Circuit issued its opinion reversing the Order vacating the arbitral award, Plaintiffs filed a petition for writ of certiorari to the Supreme Court. *See* Mot. Stay, ECF No. 19. This Court stayed the case until the Supreme Court denied Plaintiffs' petition for writ of certiorari. Order Staying Case, ECF No. 21; *Schafer v. Multiband Corp.*, 134 S. Ct. 2845 (2014).

alternative argument. Accordingly, Multiband filed a motion for summary judgment seeking affirmance of the arbitral award.

II

The threshold issue is whether the Sixth Circuit decided Plaintiffs' alternative claim on appeal. Because this case was remanded from the Sixth Circuit, this Court must "proceed in accordance with the mandate and law of the case as established by the appellate court." *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Petition of U.S. Steel Corp.* 479 F.2d 489, 493 (6th Cir. 1973). The Supreme Court's interpretation of the doctrine is that "when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine protects parties from having to re-litigate issues decided in prior stages and assures that inferior courts obey the law established by superior courts. *NAACP v. Detroit Police Officers Ass'n.*, 676 F. Supp. 790, 791 (E.D. Mich. 1988).

"The related 'mandate rule'—a 'specific application of the law-of-the-case doctrine'— holds that 'a district court is bound to the scope of the remand issued by the court of appeals." *Kindle v. City of Jeffersontown, Ky*, 2014 WL 5293680, at *4 (6th Cir. Oct. 16, 2014) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)). Thus, when the Sixth Circuit remands a case for further proceedings, "the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Id*. (quoting *Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013)).

The law-of-the-case doctrine, however, is "limited to those questions *necessarily decided* in the earlier appeal." *Id*. at *5 (quoting *Hanover*, 105 F.3d at 312) (emphasis added). "[T]he phrase 'necessarily decided' . . . describes all issues that were 'fully briefed and squarely

decided' in an earlier appeal." *Id*. (quoting *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 F. App'x 370, 374 (6th Cir. 2004)). "On remand, 'the trial court is free to consider any issues not decided 'expressly or impliedly by the appellate court.'" *Id*. (quoting *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958-59 (6th Cir. 1997)).

When determining whether an issue was necessarily decided, the mandate "must be read with the analysis offered in the opinion . . . [and] context matters." *Id*. (quoting *United States v. O'Dell*, 320 F.3d 674, 681 (6th Cir. 2003)). "In other words, 'the trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Id*. (quoting *Mason*, 729 F.3d at 550).

**A**

On appeal, Multiband challenged only this Court's conclusion that the arbitrator had acted in "manifest disregard" of the law, which formed the basis of its Order vacating the arbitration award. In other words, Multiband's appellant brief focused solely on the issue of whether this Court erred in concluding that the arbitrator acted in "manifest disregard" of the law.

In contrast, in their appellee brief, Plaintiffs advanced two arguments for affirming the Order vacating the arbitration award. The majority of Plaintiffs' appellee brief addressed their contention that the arbitrator acted in "manifest disregard" of the law. However, Plaintiffs' appellee brief also advanced an alternative ground for affirming this Court's Order: that the arbitrator exceeded his powers by dismissing without addressing Plaintiffs' other claim for fraudulent inducement and estoppel:

> **C. The Arbitrator Exceeded His Power By Deciding Issues Not Submitted to Him Regarding Appellees' Alternative Claims And His Decision Dismissing Such Claims Must Be Vacated Under 9 USC § 10(3)-(4)**

> The Petitioners submitted only the Agreed-Upon-Issues for summary disposition. The Arbitrator decided those issues but then dismissed all Appellees' claims without mentioning how resolution of the Agreed-Upon-Issues precluded the Alternative Claims (fraudulent inducement). Petitioners were not given the opportunity to present evidence or be heard on their Alternative Claims. Accordingly, the Arbitrator exceeded his powers and the Arbitration Decision must be vacated. *See* 9 USC § 10; *Kashmer Davidson Securities Corp. v. Msciz*, 531 F.3d 68 (1st Cir. 2008).

Plaintiffs' Appellee Br. 54.

Thus, although the argument is confined to only a single paragraph, Plaintiffs did present their alternative argument to the Sixth Circuit. Plaintiffs identified the alternative claim—that the Arbitrator exceeded his powers by dismissing their claim that Multiband was not relieved of its responsibility to Plaintiffs by the arbitrator's finding that the indemnity agreement was unenforceable; they identified the controlling statutory authority—9 U.S.C. § 10(3)-(4); they explained the factual circumstances underlying the alternative claim—that the Arbitrator refused to hear evidence on the alternative claims; and they cited caselaw to support the proposition. Although concise, Plaintiffs presented their alternative claim that the Arbitrator exceeded his power by refusing to hear evidence on the fraudulent inducement claim to the Sixth Circuit.[6]

The Sixth Circuit, in turn, rejected the argument. After explaining the grounds for vacating an arbitration award, the Sixth Circuit concluded that the only possibly viable claim was that the arbitrator acted in "manifest disregard" of the law:

> Section 10 lists grounds for vacating an award. *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). These are:
>
> (1)   where the award was procured by corruption, fraud, or undue means;
>
> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;

---

[6] Indeed, Multiband's reply brief used over four pages to address Plaintiffs' alternative argument. *See* Reply 17-22.

> (3) where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> 9 U.S.C. § 10. None of the first three bases is even arguably present here. There is also no argument that under the fourth ground the arbitrator exceeded his powers, apart from an argument that, by manifestly disregarding the law, the arbitrator exceeded his powers.

*Schafer*, 551 F. App'x at 818. The Sixth Circuit rejected Plaintiffs' alternative claim that the Arbitrator exceeded his power pursuant to 9 U.S.C. § 10(b)(3) by refusing to address, let alone hear evidence, on the fraudulent inducement claim: "None of the first three bases is even arguably present here." *Id*. And to the extent that Plaintiffs' alternative claim was brought pursuant to § 10(b)(4), the Sixth Circuit also rejected it: "There is also no argument that under the fourth ground the arbitrator exceeded his powers, apart from an argument that, by manifestly disregarding the law, the arbitrator exceeded his powers."[7] *Id*. Thus, the Sixth Circuit expressly rejected Plaintiffs' alternative claim for vacating the arbitration award.

Moreover, Plaintiffs' alternative claim was also necessarily decided by the Sixth Circuit. Multiband advanced only one argument for vacating this Court's Order vacating the arbitration award: that the arbitrator did not act in "manifest disregard" of the law. In contrast, Plaintiffs presented two alternative arguments for affirming this Court's Order: either (1) the arbitrator acted in "manifest disregard" of the law; or (2) the arbitrator exceeded his power in refusing to hear evidence on the fraudulent inducement claim. A finding for Plaintiffs on either ground

---

[7] Plaintiffs contend that this language illustrates that the Sixth Circuit overlooked their alternative argument. That is, instead of determining that Plaintiffs' alternative argument was meritless, the phrase "[t]here is also no argument under the fourth ground" means that the Sixth Circuit failed to notice that Plaintiffs had indeed advanced an argument under the fourth ground. Plaintiffs' interpretation will be rejected, because the Sixth Circuit is presumed to have fully read the parties' briefs and to have understood the issues and arguments raised.

would have been sufficient to affirm this Court's earlier Order vacating the arbitration award. The Sixth Circuit, however, vacated this Court's earlier Order, and thus implicitly concluded both of Plaintiffs' arguments were meritless:

> The arbitrator's decision did not fall under any of the grounds provided by the Federal Arbitration Act (FAA) for vacating an arbitration award. . . . Under the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.

*Schafer*, 551 F. App'x at 818. Here, the Sixth Circuit, by confirming the arbitration award, implicitly found that Plaintiffs' alternative claim did not warrant vacatur as prescribed in §§ 10 and 11.

**B**

The conclusion that the Sixth Circuit explicitly and necessarily rejected Plaintiffs' alternative argument is strengthened by its Order denying rehearing. After the Sixth Circuit issued its opinion, Plaintiffs filed a petition for en banc rehearing. Once again, Plaintiffs advanced two arguments: (1) that the arbitrator acted in manifest disregard of the law; and—more importantly—(2) that the arbitrator exceeded his powers by refusing to hear evidence on its fraud claim. Indeed, with respect to its second claim, Plaintiffs even contended that the Sixth Circuit had not addressed it in its opinion:

> The Arbitrator clearly exceeded his powers by dismissing Schafer and Block's fraud claim without giving them an opportunity to be heard. The Panel's Opinion *does not explain*[8] how the Arbitrator's summary dismissal of claims not submitted to him on summary judgment does not violate Schafer and Block's due process rights and warrant vacatur under 9 U.S.C. §§ 10(3-4). *See Stolt Nielson*, 559 U.S. at 682-83.

---

[8] It is noteworthy that Plaintiffs seek rehearing based on the opinion's failure to "explain how the Arbitrator's summary dismissal of claims not submitted to him on summary judgment does not violate Schafer and Block's due process rights and warrant vacatur under 9 U.S.C. §§ 10(3-4)"—thereby impliedly conceding that the Sixth Circuit considered and rejected this claim.

Petition 14 (emphasis added). Thus, in their Petition, Plaintiffs once again directly presented the alternative claim to the Sixth Circuit—and even suggested that panel had erred when resolving that claim.

In a brief denial of Plaintiffs' Petition, the Sixth Circuit concluded that "[t]he panel has further reviewed the petition for rehearing and concludes that the *issues* in the petition *were fully considered* upon the original submission and decision of the case." Order Denying Petition, Dkt. 40 (emphasis added). The denial thus acknowledges that Plaintiffs presented two alternative claims and explains that both of those claims have already been "fully considered" by the panel.

C

Plaintiffs' arguments to the contrary are unavailing. First, they assert that the Sixth Circuit did not decide their alternative claim because this Court did not address the alternative claim in its original Order vacating the award. Resp. 6, ECF No. 30 (quoting *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 409 (6th Cir. 1991). True, "[it] is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Hall*, 941 F.2d at 409 (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). However, the Sixth Circuit has clarified that "[t]he rule is not jurisdictional . . . and deviations are sometimes permitted in exceptional cases." *Id.*; *see also Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 495 (6th Cir. 2014) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the court of appeals, to be exercised on the facts of individual cases."). Here, as outlined above, it appears that the Sixth Circuit exercised its discretion in resolving Plaintiffs' alternative claim, even though this Court did not address that claim.

Second, Plaintiffs contend that, as appellees, they were "defending on a field of battle defined by the appellant." Resp. 8, ECF No. 30 (quoting *Yesudian v. Howard University*, 270

F.3d 969, 971-72 (D.C. Cir. 2001)). Thus, Plaintiffs continue, as appellees, they had no obligation to raise their alternative claim at the Sixth Circuit; instead, they could have simply reasserted it in this Court after remand.

Although Plaintiffs did not have an *obligation* to present their alternative claim to the Sixth Circuit, they did so anyway. As noted above, although Multiband did not address the alternative ground in its opening appellant brief, Plaintiffs broached the argument in their appellee brief. Multiband then spent about four pages of its reply brief responding to the argument. Thus, in contrast to the situation in *Yesudian,* where the appellee did not raise the issue on appeal, Plaintiff-Appellees chose to—and in fact did—present their alternative claim to the Sixth Circuit. Although Multiband, as appellant, may have defined the initial boundaries of the "field of battle," *Yesudian*, 270 F.3d at 971, Plaintiff-Appellees were nevertheless able to alter those boundaries in order to present their alternative claim for vacating the arbitration award.

**D**

In summary, this Court reluctantly agrees that the Sixth Circuit has already "squarely decided" Plaintiffs' claim that the arbitrator exceeded his power by refusing to hear their alternative claim, and therefore this decision has become the law of the case. Plaintiffs presented the claim to the Sixth Circuit on appeal, and the Sixth Circuit rejected it. Plaintiffs then requested a rehearing so that the Sixth Circuit may more fully address the reasons for its rejection of the claim—a request the Sixth Circuit denied because the issue had already been "fully considered". The fact that this Court would reach a different conclusion is irrelevant. The

Sixth Circuit's opinion addressed this issue, and this Court is without authority to reconsider that ruling.[9]

### III

The Sixth Circuit has already addressed and rejected Plaintiffs' claim that the arbitrator exceeded his power. Therefore, this determination is the law of the case, and the Court need not address Plaintiffs' claims on the merits.[10] Because the Sixth Circuit has already determined that there is no ground for vacating the arbitral award, the arbitral award will be affirmed.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Vacate (ECF No. 27) is **DENIED**.

It is further **ORDERED** that Defendant Multiband's Motion for Summary Judgment (ECF No. 28) is **GRANTED**.

It is further **ORDERED** that the hearing set for November 25, 2014 is **CANCELLED**.

It is further **ORDERED** that the arbitrator's decision is **AFFIRMED**.

                                                                         s/Thomas L. Ludington
                                                                         THOMAS L. LUDINGTON
                                                                         United States District Judge

Dated: October 31, 2014

---

[9] There are limited circumstances in which a district court may nonetheless reconsider a ruling: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Hanover*, 105 F.3d at 312 (citing *Coal Res. Inc. v. Gulf & Western Indus. Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)). However, neither party contends that one of these limited circumstances is applicable to the present situation.
Moreover, these exceptions are "exceptionally narrow." *Williams v. McLemore*, 247 F. App'x 1, 7 (6th Cir. 2007). "Although the law of the case doctrine is applied with some flexibility with regard to reconsideration of earlier decisions by the same court or a coordinate court, it is '*rigidly applied to enforce a lower court's obedience to a higher court*.'" *United States v. Barnwell*, 617 F. Supp. 2d 538, 543 (E.D. Mich. 2008) (quoting *Williams*, 247 F. App'x at 7) (emphasis added).

[10] Likewise, the Court need not address Multiband's alternative arguments for affirming the arbitral award, such as res judicata and equitable estoppel.

- 19 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS