UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD J. SCHAFER, et al.

                    Plaintiffs,                          Case No. 12-cv-13152

v                                              Honorable Thomas L. Ludington

MULTIBAND CORP.,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART MOTION TO VACATE, VACATING ARBITRATION AWARD, AND REMANDING FOR PROCEEDINGS TO ARBITRATOR TO RESOLVE ALTERNATIVE CLAIMS IN THE FIRST INSTANCE**

In 2008 Defendant Multiband sought to purchase Plaintiffs' stock in DirecTECH Holding Company. At the time, Multiband was aware that the Department of Labor had been investigating certain transactions regarding the Holding Company's employee stock ownership plan; indeed, in 2008 Multiband received detailed reports concerning the investigation. At some point the parties reached an agreement on a price for the sale of the stock that also included Multiband's agreement to assume DirecTECH's prior indemnity obligations that had been executed in favor of Plaintiffs. The immediate dispute arises from Plaintiffs' efforts to enforce the indemnity agreements.

On December 4, 2009 the Department of Labor filed suit against Plaintiffs, seeking approximately $42 million. The Department of Labor and Plaintiffs eventually reached a settlement for $2.9 million. There was no admission of liability, and Multiband was informed throughout the course of the proceedings. Plaintiffs then sought indemnity from Multiband pursuant to the agreements. When Multiband refused, Plaintiffs commenced arbitration.

Plaintiffs sought either indemnity pursuant to the agreements or, alternatively, damages for inducing their reliance on the indemnification agreements.

The parties agreed to submit a series of threshold issues related to the enforceability of the indemnity agreements to the arbitrator. Multiband successfully argued to the arbitrator that the indemnity agreements were unenforceable against Multiband under Plaintiffs' breach of contract claim for an unusual reason: that the agreements were against public policy and void under 29 U.S.C. § 1110(a).[1] The arbitration proceeding was then dismissed without any attention to Plaintiffs' alternative arguments that, if the indemnity agreements were unenforceable, Multiband fraudulently induced them to enter into the agreements knowing that the Plaintiffs were detrimentally relaying on Multiband's promise to indemnify them in determining the purchase price of the stock. Plaintiffs have somewhat generically referred to this claim or claims as being grounded in fraudulent inducement to enter the indemnity agreements or as an estoppel to bar Multiband from asserting their invalidity.   This litigation ensued.

On July 18, 2012, Plaintiffs Bernard Schafer and Henry Block filed suit against Defendant Multiband Corp., seeking to vacate the arbitration award in favor of Multiband. In

---

[1] 29 U.S.C. § 1110, addressing exculpatory provisions in insurance contracts covered by the Employee Retirement Security Act, provides as follows:

(a) Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.

(b) Nothing in this subpart shall preclude—

(1) a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary;

(2) a fiduciary from purchasing insurance to cover liability under this part from and for his own account; or

(3) an employer or an employee organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan.

their complaint, Plaintiffs contended that the award should be vacated because: (1) the arbitrator manifestly disregarded the law when determining that the indemnity agreements were against public policy and void under 29 U.S.C. § 1110(a); (2) the arbitrator exceeded his authority by dismissing Plaintiffs' claims without addressing their alternative claims; and (3) the award contravenes public policy. *See* ECF No. 1.  On January 4, 2013, Plaintiffs then filed a motion to vacate the arbitration award for the same reasons.  ECF No. 9.

After two trips to the Sixth Circuit, this matter has again been fully briefed, and is ready for decision.  Plaintiffs' motion to vacate the arbitration award will be granted in part, and the matter will be remanded to the same arbitrator to determine Plaintiffs' fraudulent inducement and promissory estoppel claims in the first instance.

## I.

Plaintiffs Bernard Schafer and Henry Block founded and owned Michigan Microtech, Inc., a company that sells and installs satellite television equipment.  After the initial success of Michigan Microtech, they expanded their business and acquired partial ownership and management interests in DirecTECH, DirecTECH Southwest, Inc., and JBM, Inc. Plaintiffs created a holding company, DirecTECH Holding Company, Inc., ("Holding Company"), which became the parent company of all four entities (Michigan Microtech, DirecTECH, DirecTECH Southwest, Inc., and JBM, Inc.).

As directors of the Holding Company, Plaintiffs executed an indemnification agreement that provided that Plaintiffs would be indemnified for all losses incurred in connection to with their roles as directors of the Holding Company, with exceptions for deliberate wrongful acts and gross negligence:

> The Company hereby agrees to indemnify and hold the Board Member harmless from and against any and all past, present or future losses, claims, damages,

expenses, or liabilities (including, but not limited to, reasonable attorney's fees, court costs, judgments, fines, excise taxes related to litigation or aggregate amount pain [sic] in reasonable settlement of any actions, suites [sic], proceedings, or claims) (hereinafter collectively referred to as "Loss"), incurred in connection with any and all actions, proceedings, or suits of any kind or nature whatsoever, which arises as a result of acts or omissions of the Board Member within the scope of his activities for and on behalf of the Company and which do not involve wrongful acts or gross negligence by the Board Member.

The indemnification agreement also contained a mandatory arbitration clause.

In addition, the Holding Company also formed its own employee stock ownership plan ("ESOP") and an employee stock ownership trust ("ESOT"). Plaintiffs became trustees of the Holding Company ESOP and ESOT, and executed nearly identical indemnification agreements regarding their roles as trustees.

## A

In 2005, the United States Department of Labor ("DOL") began investigating the Holding Company and its four subsidiaries regarding stock transactions involving the ESOP and ESOT. The DOL suspected that directors and trustees of the Holding Company had breached their fiduciary duties by purchasing company stock for the ESOP at inflated prices.

### i

Despite the DOL investigation, Defendant Multiband began negotiating the purchase of the Holding Company. In 2007, the Multiband and the Holding Company agreed on a plan of acquisition and began transitioning operations to Multiband. During this transition, the Holding Company provided a detailed report of the DOL's investigation to Multiband.

In order to induce Plaintiffs to sell its corporate stock in the Holding Company, Multiband agreed to provide Plaintiffs with the indemnification agreements for losses Plaintiffs might incur in connection with their past service as trustees to the ESOP and ESOT. Specifically, Multiband agreed to indemnify each Plaintiff for any losses "which arise as a result

of acts or omissions of the Board Member within the scope of his activities for and on behalf of [the Holding Company] . . . which do not involve deliberate wrongful acts or gross negligence by the board member."

Based on these indemnification promises, Plaintiffs agreed to enter into a stock purchase agreement with Multiband.   Plaintiffs assert (and Multiband does not dispute) that these agreements were material to Plaintiffs' decision to sell their stock: "Had Multiband not agreed to undertake such indemnity obligations, it is undisputed that the stock purchase price of $43.9 Million would have been substantially higher and/or the transaction would not have occurred." Mot. to Vacate 2, ECF No. 27.  On January 1, 2009, Multiband completed the purchase of the Holding Company. For Plaintiffs' shares in the Holding Company, Multiband paid Plaintiffs $43.9 million.

**ii**

In December 2009, the DOL filed a civil suit against Plaintiffs, alleging that they breached their fiduciary duties by allowing the ESOP to purchase company stock at inflated prices. In 2011, Plaintiffs reached a settlement agreement with the DOL.  Plaintiffs agreed to each pay $1,450,000.00 to the DOL while admitting no liability for the allegations in the DOL's complaint.

Following the entry of the settlement agreement, Plaintiffs sought indemnification from Multiband pursuant to the terms of the indemnification agreement.  Multiband refused to honor the indemnification agreement.

**B**

On October 18, 2011, Plaintiffs filed an arbitration complaint against Multiband.  The parties together selected Judge Rosenbaum as an acceptable arbitrator.

Plaintiffs' primary claim involved Multiband's alleged breach of contract based on the various indemnification agreements.[2]   The threshold issue of this claim was whether the indemnification agreements were void as against public policy under 29 U.S.C. § 1110(a): Plaintiffs argued that the indemnification agreements were permissible; Multiband argued that they were void.

Because Multiband argued that the indemnification agreements were void, Plaintiffs brought two alternative claims, or a single claim based upon alternative legal theories.  First, Plaintiffs alleged that Multiband fraudulently induced Plaintiffs to enter into an indemnification agreement that Multiband apparently believed was void.  They alleged that Multiband made false representations that it would assume the indemnification obligations when "Multiband never intended to honor its indemnification obligations."  Mot. Vacate Ex. 3 ¶¶ 154, 160, ECF No. 9. Second, Plaintiffs alleged a claim for estoppel against Multiband.  Plaintiffs alleged that they relied to their detriment on Multiband's indemnification promises in selling their stock in the Holding Company.   Plaintiffs reiterated that had Multiband not agreed to undertake the indemnification obligations, Plaintiffs' stock price would have been substantially higher. Plaintiffs did not seek rescission of the indemnification provisions under either of these alternative claims (fraudulent inducement or estoppel); instead, they sought consequential, incidental, and punitive damages.

To streamline the arbitration, Plaintiffs and Multiband agreed to submit certain threshold issues regarding Plaintiffs' breach of contract claim only to the arbitrator for summary disposition.   The submitted issues addressed only the legal principle of whether the indemnification agreements were void against public policy under 29 U.S.C. § 1110(a); the

---

[2] Plaintiffs alleged six counts of breach of contract against Multiband based on agreements made directly with Multiband and on agreements Multiband assumed.

submitted issues did not include reference to Plaintiffs' alternative claims for fraudulent inducement and estoppel.[3]

The arbitrator conducted a hearing on the parties' motions for summary disposition regarding the enforceability of the indemnification agreement. In line with the submitted issues, the bulk of the hearing concentrated on Plaintiffs' breach of contract claims and whether the indemnity agreements were valid. However, Plaintiffs did refer to their alternative claims during the hearing:

> Instead it doesn't say [the indemnification agreements are] void. In fact the regulations say they're perfectly permissible. So I think we're past that. But it is important to note that the question that went unanswered here is, these were negotiated agreements, what did Multiband think they were obligating themselves to do at the time they signed these agreements, if not to provide indemnification? And there's no answer. They simply came up with, I don't agree with the— what's the assumption, it's a matter of fact, but I don't agree with the assumption that Multiband later found Section 410. They were well aware of Section 410, I believe. So what did they think they were doing?
>
> *We have a second claim here, a second series of claims associated with stock fraud.* We believed that these were valid agreements under ERISA. And we believe Multiband believed that. We negotiated—if Multiband later takes the position that promise I have gave you to induce you to sell me your stock was void when I gave it to you, ha, ha, ha. Then we've got a stock fraud case here, that is set forth in our complaint. . . .

---

[3] The arbitrator listed three threshold issues:

1. **Inducement Indemnities**: Is an agreement between a former fiduciary to an ESOP (Block/Schafer), on one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. 1110, as a matter of law, where the third party agrees to indemnify the fiduciary against claims arising from its past acts or omissions as a fiduciary?

2. **Assumption Agreements**: Is an agreement between a company sponsoring an ESOP (DTHC), on one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. 1110, as a matter of law, where the third party agrees to indemnify the company's directors and former trustees to the ESOP (Block/Schafer) against claims arising from their past acts or omissions as fiduciaries?

3. Does the payment of a settlement in the DOL Litigation render the indemnity agreements inapplicable or void under 29 U.S.C. § 1110 as a matter of law?

Resp. Ex. 5, ECF No. 11.

> And it may not be a – I haven't fleshed out exactly, the fraud case, but it is a fraud case. So that's where we are.

Resp. Ex. 4 at 64-65, ECF No. 11 (emphasis added).  The parties did not, however, conduct any discovery or submit any evidence on Plaintiffs alternative claims for fraudulent inducement and estoppel.

In June 2012, the arbitrator rendered his decision: the indemnification agreements were, in his opinion, against public policy and void under 29 U.S.C. § 1110(a).  Resp. Ex. 5, ECF No. 11.  The arbitrator concluded that Plaintiffs were "not entitled to enforce" any of the agreements. The arbitrator then entered judgment against Plaintiffs, and the arbitration service dismissed the arbitration proceeding in its entirety.

## C

On July 18, 2012, Plaintiffs filed suit in this Court to vacate the arbitration decision.  In their Complaint, Plaintiffs asserted two grounds for vacating the arbitral decision:

(1)     The Arbitration Decision finding the indemnification agreements void was in manifest disregard of the law; and

(2)     The Arbitrator exceeded his powers by dismissing Plaintiffs' alternative claims for fraudulent inducement and estoppel without allowing them to present evidence.

Compl. ¶ 57-58, ECF No. 1.

Plaintiffs filed a motion to vacate the arbitration award, which the Court granted on February 29, 2013.  This Court agreed with Plaintiffs that the arbitrator manifestly disregarded the law in finding the indemnification agreements "void as against public policy."  Because, like the arbitrator, this Court rendered its opinion on the first ground raised, it did not take up Plaintiffs' alternative request for relief—that the arbitrator exceeded his powers by dismissing Plaintiffs' claims for fraudulent inducement and estoppel without allowing them to present their

claims.  This Court concluded that "the arbitrator disregarded clearly established legal precedent (including that of the Sixth Circuit)." Op. & Order 1, ECF No. 13. Accordingly, the Court vacated the arbitration award and entered judgment in favor of Plaintiffs.

On January 6, 2014, the Sixth Circuit Court of Appeals reversed this Court's decision vacating the arbitration award. Emphasizing that arbitral decisions are designed to be final decision, the Sixth Circuit concluded that, although "the arbitrator's analysis appears to be legally unsupportable under this circuit's precedents," "there has not been such a manifest disregard of the law in this case." Op. 8, ECF No. 17. The Sixth Circuit therefore reversed and remanded the case for further proceedings.  There was no dispute that the Sixth Circuit's reversal rested primarily on its determination that the arbitrator's decision was not in manifest disregard of the law.

On remand, this Court reluctantly granted Multiband's motion to affirm the arbitral award and denied Plaintiffs' newly filed motion to vacate ("Motion to Vacate II"), finding that the Sixth Circuit had expressly addressed and rejected Plaintiffs' alternative argument.  ECF Nos. 32.  After Plaintiffs appealed, the Sixth Circuit again reversed on October 20, 2015, acknowledging some misleading language in their previous decision, but concluding that, like the previous opinions of both the arbitrator and this Court, its decision had not in fact decided Plaintiffs' alternative argument. ECF No. 37. In remanding the case, the Sixth Circuit held that the "district court should address [Petitioners' alternative grounds for vacatur] in the first instance" and could address any "other properly preserved arguments[.]" *Id*.  Both parties have filed supplemental briefs, and Plaintiffs' motion to vacate the arbitration award is again ready for decision.

**II.**

Because the Sixth Circuit has determined that the arbitrator did not manifestly disregard the law in determining that the indemnification agreements were void as a matter of public policy, the only issue that remains is whether the arbitrator impermissibly dismissed Plaintiffs' alternative claims for fraudulent inducement and estoppel without allowing Plaintiffs to present evidence on those claims and obtain a decision from the arbitrator.

**A.**

Review of an arbitration award "is one of the narrowest standards of judicial review in all of American jurisprudence." *Way Bakery v. Truck Drivers Local No*. 164, 363 F.3d 590, 593 (6th Cir.2004) (internal quotation and citation omitted); *Fed. Dep't Stores, Inc. v. J.V.B. Indus., Inc*., 894 F.2d 862, 866 (6th Cir.1990) (describing the court's role as "extremely limited"). Indeed, "[a]s long as the arbitrator's award draws its essence from [an agreement], and is not merely [the arbitrator's] own brand of ... justice, the award is legitimate." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (internal quotation and citation omitted).

Under the Federal Arbitration Act, 9 U.S.C. § 1, *et al.,* ("FAA"), "a court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 and 11." *Hall St. Assocs. V. Mattel, Inc.,*552 U.S. 576, 582 (2008) (internal quotations and citation omitted).  Two such grounds are:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3)-(4).

As explained by the Sixth Circuit in its first opinion, "[a]bsent extraordinary circumstances, arbitration is supposed to resolve, with finality, legal as well as factual disputes." Op, ECF No. 17.  The arbitration proceedings in this matter did not do so.  By entering a final arbitration decision concluding that the indemnity agreements were unenforceable under a breach of contract theory without addressing Plaintiffs' alternative claims, the arbitration decision amounts to such an imperfect execution of arbitral powers "that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

If an arbitrator renders a decision without allowing a party the opportunity to present pertinent and material evidence, the arbitration award lacks fundamental fairness and may be remanded. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002) (noting that fundamental fairness requires "notice, an opportunity to present relevant and material evidence and arguments to the arbitrators" among other things); *Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 995 (3d Cir. 1997) ("[I]t has become axiomatic that a district court may vacate an award if a party to an arbitration proceeding has not been given notice and opportunity to present arguments and evidence on the merits of the dispute."); *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cr. 1979 ("All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard.").  The decision therefore may be vacated, modified, or corrected pursuant to § 10(a)(4).

## B.

Having concluded that the arbitrator did not properly address all of Plaintiff's claims, the next issue is the proper scope of remand.  Under the FAA, "[i]f an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." 9 U.S.C. § 10(b). Plaintiffs argue that the

arbitrator's dismissal of the entire arbitration decision undermined the validity of the proceedings, such that the matter should be vacated in full and assigned to a new arbitrator. *See PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 265 (5th Cir. 2015); *Matlack,* 118 F.3d at 995.  Defendant disagrees, arguing that the arbitrator resolved Plaintiffs' breach of contract claim, and that the matter should only be remanded to the same arbitrator for the purpose of addressing Plaintiffs' alternative claims in the first instance.

While the arbitrator's decision regarding Plaintiffs' breach of contract claim may have been incorrect, the Sixth Circuit has determined that the decision was not in manifest disregard of the law, and that it conclusively determined Plaintiffs' breach of contract claim. The decision, according to the Sixth Circuit, did not amount to prejudicial misconduct or misbehavior under 9 U.S.C. § 10(a)(3), nor was it merely the arbitrator's own brand of justice. *See United Paperworkers Int'l Union,* 484 U.S. at 36. The arbitrator's decision as to Plaintiffs' breach of contract claim therefore will remain.  Any concerns regarding the fundamental fairness of the proceedings will be resolved by vacating the arbitration award and remanding this matter to the arbitrator to allow Plaintiffs the opportunity to present evidence on their alternative claims.

### III.

Accordingly, it is **ORDERED** that this Plaintiff's Motion to Vacate II, ECF No. 27, is **GRANTED IN PART**.

It is further **ORDERED** that the arbitration award is **VACATED.**

It is further **ORDERED** that the proceedings are **REMANDED** to Judge Rosenbaum for the purpose of resolving Plaintiffs' fraudulent and inducement promissory estoppel claims in the first instance.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 27, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on April 27, 2016.

s/Michael. A. Sian
MICHAEL A. SIAN, Case Manager